IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                  Case No.  13-10168-01-JWB

RAUL MARQUEZ-RAMIREZ,

        Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on Defendant's motion for sentence reduction. (Doc. 102.) Defendant seeks a reduction to time-served based on his underlying health conditions and the current COVID-19 pandemic. The motion has been fully briefed and the court is prepared to rule. (Docs. 106, 107.) For the reasons stated herein, Defendant's motion is DENIED.

### I. Facts and Procedural History

Defendant was charged in a 7-count indictment with unlawful conspiracy, distribution, and possession with intent to distribute methamphetamine; possession with intent to distribute marijuana; and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 15.) On March 5, 2014, Defendant entered a plea of guilty to a superseding information charging one count of unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of unlawful interstate travel to facilitate the unlawful possession of methamphetamine with intent to distribute, in violation of 19 U.S.C. § 1952(a)(2). (Doc. 69.) Defendant entered into a plea agreement with the government under which the parties agreed to request a sentence of 15 years (i.e., 180 months.) (Doc. 70 at 3-4.) The Hon. Monti L. Belot

sentenced Defendant to a total imprisonment term of 180 months, to be followed by a three-year term of supervised release. (Doc. 90.)

Defendant is currently housed at FCI Lompoc in Lompoc, California. He is 64 years old. His projected release date is July 27, 2026. Defendant's motion states that he suffers from diabetes, obesity, and hypertension (high blood pressure), which in addition to his advanced age allegedly "put him at an extraordinar[ily] high risk of serious illness or death" from a COVID-19 infection. (Doc. 102 at 1.) Defendant has had Type II diabetes since his early twenties, for which he takes glucose and metformin. (*Id.* at 3.) Defendant also has high cholesterol and states that he suffered a "minor stroke" in 2005 from which he lost total vision in his right eye. (*Id.* at 2; Doc. 102-4 at 2.) The motion cites studies showing that these health conditions increase Defendant's risk of suffering serious illness or death from COVID-19. (*Id.* at 3-6.) Additionally, the motion asserts that Defendant "tested positive for COVID-19 while serving his sentence at FCI Lompoc" – although it does not state precisely when – and alleges that his symptoms of fatigue and difficulty breathing "have continued." (Doc. 102 at 7.) Documents attached to the motion indicate Defendant was treated at FCI Lompoc and survived his bout with COVID-19, although Defendant asserts that "the long-term health effects for those who initially survive … COVID-19 are substantial."[1] (Doc. 102-4 at 2.) Defendant also points out that FCI Lompoc experienced one of the worst COVID-19 outbreaks of any correctional facility in the country and asserts that Defendant is at greater risk of contracting COVID-19 at that facility than if he were in the community. (Doc. 102 at 9.)

---

[1] In support of this assertion, Defendant cites an article by an investigative journalist who described some anecdotal evidence and preliminary research studies on the effects of COVD-19. (Doc. 102-4 at 2) (citing Lori Parshley, *The Emerging long-term complications of Covid-19, explained*, Vox (May 8, 2020), at https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms.) The article states in its conclusion that "[a]s all this preliminary research shows, we are still in the early days of understanding what this virus might mean for the growing number of Covid-19 survivors…." *Id.*

According to the Bureau of Prisons (BOP) website, FCI Lompoc is a low security federal correctional institution with a population of 945 inmates. Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lof/ (last accessed Nov. 23, 2020). The BOP reports that FCI Lompoc currently has zero confirmed active cases of COVID-19 among both inmates and staff, although it reports a total of 702 prior confirmed inmate cases and 19 prior staff cases, resulting in two inmate deaths. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last accessed Nov. 23, 2020).[2]

Defendant argues his health risk from COVID-19 presents an exceptional circumstance that warrants a reduction in sentence to time-served, and that such a reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a). (Doc. 102 at 20.) Defendant specifically asks for imposition of a time-served sentence with a supervised release condition of home confinement for one year, followed by two additional years of supervised release. (*Id.* at 23.) He proposes a release plan under which he would reside with his sister and nephew in Los Banos, California. (*Id.*)

The government concedes Defendant's medical records confirm he suffers from Type II diabetes, hepatitis C, high cholesterol, and hypertension, and that these conditions establish extraordinary and compelling reasons for consideration of compassionate release. But it argues that when balanced against the factors in § 3553(a), Defendant's medical condition fails to demonstrate that early release from his sentence is warranted. (Doc. 106 at 13-14.)

**II. Legal Standard**

---

[2] Citing two articles from July 2020, Defendant claims the number of people infected "is surely higher" because "the BOP admits they are short on tests, and only testing people serving sentences who are symptomatic." (Doc. 102 at 10.) The BOP website states that the BOP "has begun additional testing of asymptomatic inmates to assist in slowing transmissions within a correctional setting." Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last accessed Nov. 23, 2020).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), was amended by The First Step Act to allow a defendant to file his own motion for release. A defendant may seek early release from prison if "(1) he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or (2) 30 days have passed since the warden of his facility received his request for the BOP to file a motion on his behalf." *United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (citation omitted); *see also* 18 U.S.C. § 3582(c)(1)(A). This requirement is jurisdictional. *Boyles*, 2020 WL 1819887, at *2. The government concedes in the instant case that Defendant has satisfied the exhaustion requirement. (Doc. 106 at 7.)

If a defendant satisfies the exhaustion requirement, the court may reduce Defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), if the court determines that (1) "extraordinary and compelling reasons warrant such a reduction;" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) ... and a determination has been made ... that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(i-ii). Finally, the court must also ensure that any sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's policy statement pertaining to sentence reductions under 18 U.S.C. § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13. There are four categories of extraordinary, compelling circumstances identified in the statement: (1) the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (2) the defendant is at least 65 years old,

is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; (3) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner; and (4) other extraordinary and compelling reasons.  U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1.

Defendant bears the burden of establishing that compassionate release is warranted under the statute.  *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)) (defendant bears burden to show reduction is warranted under Section 3582(c)(2)); *United States v. Bright*, No. 14-10098-JTM, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020).  *See United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *1–2 (D. Kan. Nov. 4, 2020).

**III.  Analysis**

Defendant has satisfied the statutory exhaustion requirements.  Additionally, the court finds Defendant has shown that he is susceptible to heightened risks of serious complications or death from a COVID-19 infection, given his age and health conditions such as diabetes, obesity, and hypertension, factors which the Department of Justice has recognized place an inmate at higher risk of complications from COVID-19.  *See Dixon*, 2020 WL 6483152, at *3.  Defendant has thus shown extraordinary and compelling reasons that allow consideration of his request for compassionate release.  After considering Defendant's circumstances under the sentencing factors in 18 U.S.C. § 3553(a), however, the court concludes the motion for sentence reduction should be denied.

The sentencing factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and

provide just punishment; the need for the sentence to afford adequate deterrence and protect the public from further crimes of the defendant; the need for the sentence to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

According to the Presentence Report (PSR) in this case (to which Defendant did not object) in October 2013 a Wichita police detective made several undercover buys of one or two-ounce quantities of methamphetamine from an individual. Officers were thereafter able to identify Defendant as the supplier of the methamphetamine. An October 15, 2013, search of Defendant's residence disclosed "over $30,000 in US currency, two pounds of crystal methamphetamine, several packages of marijuana, multiple guns, and drug ledgers and documents…." (Doc. 83 at 10.) In an interview, Defendant admitted having received five kilograms of methamphetamine two days previously and said he had already sold approximately three of the kilograms for anywhere from $12,000 to $14,000 per pound. (*Id.*) Bank receipts found on the scene showed a deposit of $7,000 into a local bank account on October 15, 2013, and Defendant acknowledged this and other deposits were made on his behalf by a co-defendant. (*Id.*) For purposes of sentencing, the offense was found to involve at least 1.5 but less than 5 kilograms of methamphetamine. (*Id.* at 11.) In his plea agreement, Defendant admitted that prior to October 2, 2013, he received quantities of methamphetamine from Texas and distributed them in Wichita; that he used his residence to store drugs, guns, and money; that officers found the aforementioned items in his house; that the firearms were used to protect the drugs and currency in the residence; and that he had been convicted of multiple felony violations and could not lawfully possess a firearm. (*Id.* at 11.) Defendant's guideline calculation included enhancements for possession of a

dangerous weapon and maintaining a residence for the purpose of distributing a controlled substance, as well as a reduction for acceptance of responsibility.  (*Id.* at 12-13.)  Defendant's adjusted offense level was 35.  (*Id.* at 13.)

The PSR shows Defendant has criminal convictions spanning a forty-year period, including multiple felony drug convictions when Defendant was between 40 and 51 years of age, and misdemeanor convictions for exhibiting a deadly weapon, reckless driving while evading police, and possession of a "billy club."  (*Id.* at 14-22.)  He committed the instant offense while under a criminal justice sentence for parole in California. (*Id.* at 22.)  His total criminal history score under the guidelines was 20, placing him in Category VI.  (*Id.*)  Defendant's resulting guideline imprisonment range was between 292 and 365 months, but due to the statutory maximum penalties for the offenses to which he pled guilty, his effective sentencing range became 180 months.  (*Id.* at 26.)

The foregoing summary shows the circumstance of the offenses were extremely serious in nature and that they weigh heavily against a reduction in Defendant's sentence, notwithstanding his substantial health issues.  The combination of possessing large quantities of dangerous drugs, an interstate drug distribution network, and unlawful possession of multiple firearms to protect drugs and currency, all indicate the need for a substantial sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  Defendant's history and characteristics further show a high likelihood of recidivism and indicate a reduction in sentence would be contrary to the interest of the public in being kept safe from further crimes by Defendant.  Defendant's previous willingness to possess firearms despite being prohibited by law from doing so, and his willingness to engage in serious drug trafficking activity despite being on parole from a prior criminal offense, likewise weigh strongly against a reduction.  The guideline range

applicable to Defendant as a result of his plea agreement was capped by statutory maximum penalties to 180 months. Defendant has now served more than half of that term and has approximately six years left to serve. The record indicates Defendant will be able to receive constitutionally adequate medical care from the BOP. Given all of the circumstances, the court concludes the section 3553(a) factors weigh strongly in favor of requiring Defendant to complete the 180-month sentence previously imposed upon him and that they outweigh the increased risks to Defendant's health from the COVID-19 pandemic.

### IV. Conclusion

Defendant's motion to reduce sentence (Doc. 102) is DENIED. IT IS SO ORDERED this 24th day of November, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE